### No. 30,719.

J. M. Bell and Harry G. Bell, Partners, as J. M. Bell & Son, *Appellees*, v. George Swiercinsky et al., *Appellees*, and A. M. Sanborn et al., Partners, as The A. M. Sanborn Lumber Company, *Appellants.*

(14 P. 2d 721.)

Opinion filed October 8, 1932.

*N. J. Ward,* of Topeka, for the appellants.

*W. D. Vance* and *Fred Emery,* both of Belleville, for appellee George Swiercinsky.

The opinion of the court was delivered by

Burch, J.: The action was commenced by Bell & Son to foreclose a mechanic's lien for furnishing labor and material to build a house and garage for Swiercinsky. The Sanborn Lumber Company, a partnership composed of A. M., Austin P., and T. A. Sanborn, was made defendant, and asked for foreclosure of a mechanic's lien for

material included in the Bell lien. Swiercinsky answered that the lumber company was to furnish the labor and material to erect the improvements, and was to take in part payment a house and lot at the agreed price of $2,500. The court required the lumber company to accept a tendered deed for the house and lot, and the lumber company appeals.

Swiercinsky was needing a house, and talked to T. A. Sanborn. The result of the conversation was reduced to writing in contractual form, as follows:

### "CONSTRUCTION CONTRACT.

"This agreement, made this 11th day of September, 1930, between T. A. Sanborn and the Sanborn Lumber Company, of Belleville, Kan., as parties of the first part, and George O. Swiercinsky of Belleville, Kan., as party of the second part, witnesseth:

"The parties of the first part, in consideration of the payments and conveyances made as hereinafter set out, agree to erect and construct complete, including painting of two coats both in and outside, and at the entire expense of said first parties, for George O. Swiercinsky, upon ground furnished by him, a frame six-room bungalow of the Spanish type, including a basement under the entire house, and a garage attached to said house and basement, and to include electric wiring and conduits, plumbing hot- and cold-water pipes, all heating pipes which are built in, but not to include furnace, toilet, or light fixtures, for the sum ranging between $3,000 and $3,500, same to be erected in a good and workmanlike manner, on or before December 25, 1930, and when turned over to said second party, the property shall be free and clear of all labor and material liens whatsoever.

"And in consideration of the above, said second party agrees to pay and convey, and which first parties agree to accept as consideration therefor, to the first parties the sum of $——— when the basement, garage, and the foundations for the dwelling are completed; and when the entire house is completed according to the plans and specifications, if any used, and accepted, said second party agrees to convey unto the first parties lot three in block twenty-five of the original town of Belleville, Kan., both parties agreeing that said house shall be taken in at $2,500, and in that amount applied upon said contract.

"The dimensions of said house shall be as follows: ———, and said second party has the privilege to build said house according to specification, as well as has the right to select the quality and type of material to be used, and it is understood that the consideration above set forth may vary, depending upon the plans, and quality of material, etc., used, and if any balance is still owing to the first parties, said second party agrees to pay same when said dwelling is completed.

"Witness our hands in duplicate this 11th day of September, 1930.

    (Signed)    GEO. SWIERCINSKY, Party of the Second Part.

        SANBORN LUMBER COMPANY by and THEO. A. SANBORN,

                Parties of the First Part."

The court found that this writing was too indefinite to bind the parties when made, but that the subsequent conduct of the parties was such as to make the writing sufficiently definite to bind the parties. A writing in itself indefinite and uncertain in details may be made definite and certain by subsequent conduct induced by the writing. The real dispute here is whether there was sufficient evidence of such conduct. The finding was well supported.

The house and garage were in fact built by Bell & Son. After the contract between Swiercinsky and the Sanborns was made, T. A. Sanborn suggested Bell & Son as builders, told Bell & Son Swiercinsky was about to build and to get in touch with him, and permitted Swiercinsky to contract with Bell & Son accordingly. A building contract between Swiercinsky and Bell & Son was reduced to writing, but was not signed, and specifications were prepared. When the buildings were nearly completed a dispute arose about some minor details, and the Sanborns undertook to repudiate the contract.

The lumber company pleaded that the contract with Swiercinsky was abandoned by Swiercinsky, and asserts in its brief that the contract was abandoned by Swiercinsky. The court did not so find, and there was ample evidence to the contrary.

The court made some findings of fact. The substance of those findings most material is contained in the above narrative of the case. As an express addition to the special findings, the court made a general finding in favor of Swiercinsky and against the lumber company. This brings to the aid of the judgment evidence favorable to Swiercinsky supplementing the findings. The judgment was amply sustained by the findings and the evidence, and when this is said there is nothing left of sufficient importance to require discussion.

The judgment of the district court is affirmed.